so please try to bring your remarks to a finish. If we keep asking you questions then don't worry you're on our time and not yours and we'll just try to keep the conversation going until we've exhausted a topic. With that Judge Dubina, Judge Rosenbaum and I are ready to go and we'll begin with our first case number 17-10397 United States v. Jason Pfeiffer. Mr. Bashir. Good morning your honors and counsel. At the heart of this case it boils down to a basic question of statutory and regulatory interpretation which is what is the meaning of the term positional isomer in the CFR temporary drug schedule 1308.11 section H. And there are three reasons why the best reading of that term is the positional isomer has its common scientific definition and not the definition derived from the permanent CFR drug schedule in section D. The first is the plain text. Applying the basic Russello principle from the Supreme Court and this court throughout, the explicit reference of the DEA section D definition to the permanent schedule means that it is excluded from the other parts of the CFR including section H. You objected to the government jury instruction on the definition that I proposed. Did you offer a definition of your own? Yes your honor. The definition that we proposed derives from Dr. Dudley's testimony and it's the common scientific definition that Dr. Dudley testified to derive from a common textbook used throughout the country in chemistry curricula and there was an explicit reference to use that definition which differs materially from the DEA's definition and that's really where the heart of this case comes down to because going to the second point and what the statutory interpretation here where it rests, if we really look to the difference between the permanent CFR schedule and the key differences in the text purpose and design between the permanent and the temporary schedule, it makes sense why the DEA when it defined positional isomer, it limited it to the permanent schedule and the first thing here to note is the introductory text to both the permanent and the temporary schedule. If you look to section D, what is clear is that under section D, all isomers of a particular hallucinogen are included within that definition. So for example, if butylone is listed in the permanent schedule, by default it includes all of its isomer forms. By design and by its text, the temporary schedule doesn't function the same way. What is your best case that supports your argument that the codified definition of positional isomer does not apply in this case? There would be two cases and both from the Supreme Court, Rosello and McDermott. The Rosello case tells us that when the CFR or Congress or a regulatory agency uses explicit language to refer to one part of statute here defining positional isomer for section D, it implies the exclusion to the others. And that just makes sense with the way the definition sections are written in the CFR because if you look to section 1300 that defines terms, there are terms that are defined throughout, there are terms that are defined for particular sections and positional isomer is quite explicit and it's consistent with the DEA's rulemaking history that there's a definition for that permanent schedule. McDermott would be the other case because it is the basic principle of statutory interpretation for scientific terms, much similar to plain language cases. Absent contrary intent, we presume that when an agency or a body uses a scientific term of R, it carries its common scientific meaning. So the contrary intent in this instance is section D. The DEA did create a unique definition for section D by design because in section D, when a term is listed, it includes all positional isomers. That's just not the case with the temporary section because by design, the temporary section's purpose is to capture a limited set of, if you will, designer analogs. That's what the history tells us, that there are certain substances that don't fall within that isomer category. But Congress wanted to give the DEA authority to temporarily list them so there's time to study that substance, go through notice and comment, and then see whether or not we want to include it into the permanent schedule. How long does that temporary classification last? Two years with a one year renewal and that full term occurred in this instance as well. So in that- Then it went into the permanent schedule. Yes, and then by design. So it's up to two years with an additional year because in the permanent scheduling, on average, it would take anywhere from six to 12 months. So we've seen instances where a substance goes on the temporary list for that six months. In the instance here of Butylone, it lasted for the full three year period before it was brought up. And there's a real purpose to that as well because we just look at an example like Butylone. For instance, what was notified to the HHS and by the DEA were 10 cathenoids. And the substance that was targeted was Butylone. That was what was notified. That was what was listed because Butylone was identified as a designer of ecstasy MDMA. What was not listed was Ethylone. And at that time, it's because during those two year period, presumably what the DEA is doing is studying that substance. Using its definition to see, okay, are there other forms of this drug that are also included? And the really critical point is, had the DEA intended to include Ethylone into the temporary section, there's two very, very simple ways it could have done so. All it needed to do was either cross-reference its section D definition or it could have listed Ethylone by name. But it did neither. And when it does neither- Let me ask you a question. What about the list, the DEA online list of controlled substances? Yes. The website is an important point here because it's juxtaposed with the official register and the official notice. So when we're looking to the intent and what the DEA has actually intended, the official register is what controls as compared to the website. Now, when we look at what was notified to Congress, sorry, to the HHS, and what was published on the official register, it's Butylone and its optical positional geometric isomers. Your position is we just ignore what's on the online list? It's not necessarily what we ignore, but what you would defer to if there's a conflict between the two. Because what's the difference here is- What is the basis for that? Why would you defer to the one list versus the online list? Well, the online list because I'm aware of no case, and try to make sure we're covered this, that there's agency deference to what is listed in the DEA agency website. But if we looked even to the record in this case, by the government's own admission, there's no codified literature that lists Ethylone. The only place that Ethylone appeared after the fact was on the website. But when the DEA listed its register, its actual official notice, which is where we derive our fair notice principles, and we defer on our statutory interpretation. It was listed in the online list at the time that your client was engaged in this activity, wasn't it? Yes, that much is true. So, excuse me, let me ask you a question then. Is it your position then that- I guess your position is one of two things. Either or both, maybe. That the statute's not ambiguous, so our deference isn't an issue. Or there's no deference, even if it is possibly- even if it is ambiguous, that we don't defer to the agency interpretation in a criminal case. Well, I would push back on both of those to make sure that we're clear. The agency interpretation in the website is afforded no deference because that is not an agency interpretation. Boyer, all of the cases from the Supreme Court, not a single one has recognized an agency's website as being an official interpretation. We would fully concede if this was a policy manual, if this was the actual DEA's official notification, and why we stressed this in our reply as well. If any of these official notice, Boyer, for example, is the Secretary of Labor giving the actual interpretation of regulations, that is entitled to deference. This is the website of an agency which no court has held that that is entitled to deference. As to the ambiguity point, the standard rules of statutory interpretation, we start with the text of the CFR and its official notification. So the text, and both parties would concede this because it's just a simple fact, the text does not include ethylone. The CFR text did not, the letters to HHS did not, the official registry did not. It said butylone and positional isomer, and what was missing is positional isomer as defined in Section D. And that's important because by the DEA's own admission, the term positional isomer is subject to interpretation. It is why they defined it for Section D and explicitly said we will use this for Section D. And never in the 10 plus years since they defined it, and the multiple times they've revisited, has said we're going to expand it. The DEA is free to do so. They could do so tomorrow. And in fact, it seems as if that's where the DEA is heading. But by design, they have not done so because the Section H is not intended to capture all isomer forms of a substance. Because at that time when you're placing something on a temporary list, the purpose is to capture that drug. And if there are other drugs the DEA wants to include, the critical point is they just need to be clear and provide proper notice. Because then we run into this problem that Your Honor is bringing up. And I don't mean to diminish the practical confusion that may occur. What is on a website? What's on an official notice? All the case law tells us that we have to look to the official notice. Because otherwise, we're going to run into problems in the case law where you have something on a website. And there could be errors on a website. There could be mistakes. It could be. But if our concern is a due process one, why does it not matter that it's listed on the website? Because as a matter of due process, from the Supreme Court case law down, what we look to is the official codified registry. A term that we've had in my mind is we simply just don't legislate by website. The website is not an official notification to the public at large. We are, and I would even say it is, even if we look at it as a legal fiction, it's the legal fiction that the Supreme Court has set down for us. This is why we have the CFR, why we have codification. If it was the other way around, we would be deferring to what is on the website. We would be subject to the same problem. And as I see my time is concluding, you can see there's other issue that would arise here as well. Because in certain instances, if ethylene is never listed and it's just on the website, any legitimate scientist during that temporary period could, like Dr. Deadly testified here and said, wait a minute, this isn't a positional isomer. And there might be a legitimate use. And there are examples of positional isomers and other isomers that do have legitimate use. A very common one, I only know because I had a child recently, is progesterone is an isomer of a form that has a legitimate use. So you have this debate. And the DEA is saying, if I can just conclude this one point, the purpose of giving that notice is for legitimate researchers to provide this notice and comment, to provide information during the temporary period. So that's why the official codification has to control in this case. All right. Thank you, Mr. Brashear. You've saved your time for rebuttal. Mr. McDonald. Good morning, your honors, and may it please the court. In 2014, when the DEA placed butylone and its positional isomers in the temporary schedule, it did not elaborate on the term positional isomer or specifically define it. Now, even assuming that the codified definition from 2007, assuming for the sake of argument that that on its own terms doesn't require broad application of that definition throughout the CSA, it's still appropriate when determining the meaning of an undefined term to look to how that term is used or defined in other provisions of the same statute or... On the other hand, it does specify as used for purposes of section D only. Does it not? I mean, does it not say that? And what are we to make of that language? No, your honor, it doesn't say in section D only. It says as used in subsection D. And there, if you just view that section in isolation, there are two ways to interpret that. One is that it's illustrative. DEA is pointing out where that term is relevant, or at least one place where that term is relevant at the time of enactment. And we would both agree that at a minimum, that provision requires the application of that definition in subsection D. But you have to admit it's kind of strange that that's the only place... That it refers to when the term is used elsewhere in the statute. I agree it's... It at least raises the question of why was that term used? Okay, so it's ambiguous. If you view that provision in isolation, we agree that it's... There's some lack of clarity. There's some ambiguity. But this court doesn't just view a provision in isolation. It looks to the entire statutory context to determine which interpretation of the phrase as used is correct. So for example, if preceding that definition was a provision that said, as a general matter, positional isomer means this, but as used in this section, it means something else. Or... Why doesn't it just say positional isomer means whatever it means? I mean, why is it specific to section D? If it's only really used in two places in the statute? Well, the DEA was operating on the premise because at the time, in 2007, the term positional isomer did not appear in the temporary schedule. And if you look at the commentary accompanying the 2007 codification of the definition, there's a section that says existing references to the phrase positional isomer in the CSA and its regulations. In that section of the commentary, the DEA says that the only existing references to the term positional isomer are ones referring to the permanent schedule of hallucinogens. You make a good point about why the DEA did or didn't do what it did or didn't do. But that creates a problem for you, in my opinion, because what may have seemed appropriate to do back in 2007 for the reasons you just identified means that the DEA didn't update the regulatory language as it should have once it added positional isomers to another portion of the regulation which created criminal liability. That's what it should have done, right? If there's no reason to give any other definition in 2007 because positional isomers only exist in one area, but after that point in time, positional isomers now expand to other areas and you've got to update the definition, the DEA does not update the definition. It's a very simple thing to do. It just didn't do it. Well, now that agencies are supposed to roll back two regulations for every new one, it might not be as simple as... Well, but that doesn't speak to what was happening in 2014. Fair enough, Your Honor. And even if it does, it doesn't justify having unclear regulations. I agree, Your Honors, that had the DEA amended the definition provision, amended that language to speak to other subsets, it would be clear. In fact, we probably wouldn't be here arguing today. But that subsection doesn't say it would be a problem if it said only as used in this subsection and no other. Well, if that were the case, then you lose, right? Then forget ambiguity. Now it's clearly in the defendant's favor. If it says only, then you're out. There's no way you can grab onto that definition, right? Then it would be at least very difficult for us to grab onto that definition. The reason I say that is because let's assume at least that that definition section doesn't require broad application throughout the CSA. Okay, fast forward seven years to 2014. The DEA uses the term positional isomer, and it doesn't define it there, but it has to mean something. So even if the definition section on its own terms doesn't reach that section, you still have to give it some meaning, and it's appropriate to look even to other places within the statute, outside the statute, that don't purport by themselves to apply to that section to determine, to look at the regulatory context that the DEA was working in at the time to see what it might have meant. If I were an enterprising chemist a la Breaking Bad, and I decided to look at Title 21 of the Code of Federal Regulations, and I decided that I was going to get involved with butylone and ethylone because they were profitable synthetics, what would I decide as a reasonable, objective observer about what in the world positional isomer meant? So you would first look throughout the CSA to see is this, how is this term defined, if at all? The only definition you would find, it's a different case if there are multiple definitions in the code, and it's not clear which one applies, but the only definition you would find is the one codified. And if you were looking to get into the ethylone business, it would be a reasonable person knowing that ethylone, under that definition, is a positional isomer of butylone, wouldn't disregard it because the DEA might have intended some other uncodified definition. And this is supported by the commentary accompanying the 2007 codification of the definition. The DEA referring to other types of isomers, optical isomers, geometric isomers, says that those are specific, well-understood scientific terms and don't need further definition. But positional isomer is not universally defined and subject to different interpretations, so it was important that it make the definition that it had long used public. We're not aware that the record shows that the DEA has not used any other definition of positional isomer. And if it were, particularly given that it made public this definition and the reasons for doing so, if it was secretly using some other definition, it would be very important that it make that definition public too, but it's never done so. So let me ask you something. Just for purposes of this question, let's assume that the statute's ambiguous and we don't agree with the analysis that you've just given. I'm not saying that that's the case, but I want you to assume it for this question. What is your best argument then for why it is that there was notice to Mr. Pfeiffer here? So first of all, the evidence at trial shows that he had notice. In response to one of the agent's questions at the time after they searched his home, they asked him if he knew it was illegal. His first response was no. The agent then followed up and said, well, the way it was being packaged, the way it was shipped, didn't that lead you to believe that it was illegal? And Pfeiffer said, yes, but I didn't think it was that serious. There's also plenty of circumstantial evidence of knowledge. But I mean, what's the evidence? Well, what is the best argument for notice on a legal basis as opposed to an evidentiary basis? On a legal basis, the best argument for notice is that there is only one definition. There's only one definition to choose from. So anybody looking at the statute and the regulations trying to determine the meaning of the term. I'm sorry, it's my fault. I'm not asking the question clearly. We've already decided the statute's ambiguous. There is a rule of lenity, but my understanding of the rule of lenity is that if there is notice that would amount to due process, for the individual, that we can construe an ambiguous statute in such a way as to provide appropriate notice. I'm wondering here, what is the notice that we would use? And I asked opposing counsel some questions about that as well. I just am wondering what your take is on that. A few responses, Your Honor. First, the rule of lenity only applies not just when there's any degree of ambiguity, but only if after applying every tool courts have, it's so ambiguous that you just have to guess. It's a tiebreaker in favor of the judge. I'm asking you to assume that from a statutory construction point of view, it is so ambiguous that we now have to decide whether the rule of lenity applies. So then, Your Honor, there's one more tool to apply before the rule of lenity, and that's deference to the DEA's interpretation. And the document showing that interpretation is a public one. It's available on the DEA's website. You're talking about the report or the list? The controlled substances list. Okay. The one that I was talking about earlier. Right. Okay. Why is it that that provides appropriate notice when Mr. Beshear says that, you know, it hasn't been adopted through any kind of normal agency protocol or any rulemaking process, and there's no Supreme Court case that says that that can be relied on? Well, if it had been adopted through formal rulemaking process and... It would be in the regulations. It would be in the regulations. It wouldn't be a deference question. It would be the law. And we're not saying that this by itself... It's not a handbook or anything like that. Is it comparable? Is it analogous to something that the Supreme Court has said is entitled to deference? It's comparable to agency literature like a handbook or an opinion letter. This isn't some scrap of paper posted to DEA bulletin board. And what makes it analogous to other materials that the Supreme Court has said are entitled to deference? Well, what's important is that it shows the agency has considered the question. What truly differentiates something you might not refer to to something you do is whether it shows that agency's considered judgment on the issue in question. How can we tell that, though? How can we tell it wasn't just some guy sitting there and posting whatever he wanted to the website? I don't know, the webmaster or something. This is an official DEA publication. It's not something that we found in the far reaches of the DEA website. It's a list that it regularly updates. But those lists, assuming they get deference, they don't get typical Chevron deference, right? They get deference only to the extent that they're able to persuade on their own. They get deference under our, unless they plainly contradict the regulation itself. So you're saying they get Chevron deference through the back door? I'm not sure I understand the question, Your Honor. If Chevron deference is given generally to regulations which go through a notice and comment period and are the reasoned deliberate result of a process by an administrative agency, why should that level of deference also apply to something that does not go through those formal channels like this list? Because we're not talking about Chevron deference here, which only applies when an agency through formal channels is interpreting one of Congress's statutes. Then that level of formality is required. What sort of deference are you talking about then? This is our deference. I know. What does it mean in the abstract, in the concrete? So it means that we defer to the DEA's interpretation of its own regulations and we can defer to- No matter what? So long as the materials are not, don't plainly contradict the terms of the regulation that it's interpreting. All right. Let me ask you one more question so I can ask Mr. Bashir the same thing when he gets back up again. Assuming you lose, and that's a big assumption because none of us have talked about the case yet, but assuming that you lose, what is the appropriate remedy? An acquittal or a new trial? It would be neither, Your Honor. Well, something's got to happen to Mr. Pfeiffer. Right, so- He either goes free or he gets retried. There are really no other alternatives. Here are two alternatives. First, Pfeiffer's theory is that you should determine the word based on its established meaning. So even if Dr. Dudley's testimony is relevant and show that there's some other established meaning, that doesn't mean that the DEA's codified definition is not an established meaning. It had been there for seven years. But that means that the jury wasn't given one of those established meanings to be able to choose between them, which in that case would mean that the remedy would be a new trial, right? No, Your Honor, because if positional isomer is undefined, and it just has- If it's undefined, then any under the McDermott principle, we know that there are multiple meanings. But you can't choose yours to the- It's no different than if Mr. Bashir had convinced the district court- I don't know if he was a trial lawyer or not, but if he had convinced the district court to give only his definition of a positional isomer and excluded yours, that wouldn't sit well with you, I would take it. No, it wouldn't, Your Honor. And the reason is that the principle that you look to when you're dealing with a term of art that you deal with its established meaning. Well, here we know, because the DEA says in its commentary that there's not one single established meaning. So positional isomer, therefore the term is undefined and proving that something is a positional isomer under any established meaning of the term would presumably suffice. That's assuming that this particular definition- You're saying that no matter what, this is harmless error? Yes, Your Honor. Even though his expert testified to X and the district court refused to give an instruction based on X with regard to the definition, he gets no relief assuming that you lose on the definitional issue. So if Your Honor's determined that- He's right and you're wrong. So the district court should have, at the very least, given his requested jury instruction. And you've taken me in a whole different tangent, but my question was going to be to you. Didn't you put all of your prosecutional eggs in the definitional basket and not put on any evidence to sustain a verdict on a different definition? And if that's the case, why isn't an acquittal the appropriate remedy in this case? So even assuming through some mechanism that expert testimony at trial as to what the most common definition, for example, of this term is, even assuming that's relevant- Well, no, I'm asking you to assume that we've concluded that. That it is relevant. Yes. Then in that case, the district court ought to hear from both experts to determine if that's the correct means of determining what the definition is as a matter of law. And the district court ought to hear from both experts. And make a decision outside of the jury's verdict after a trial without submitting it to a new panel? Yes, Your Honor, because the meaning of positional isomer is a question of law. Dr. Dudley's testimony, if it's relevant at all, it shouldn't have gone to a jury or the jury to decide. Well, but the jury needed a definition. That's why he gave a definition that you requested. The jury couldn't have been... It would have been crazy, I think, to tell the jury to decide whether or not ethylone was a positional isomer of butylone without defining the term positional isomer, right? I agree, Your Honor. And that's why the DA codified this definition. You know, but we're getting back to the question of whether or not there was error. And I'm asking you to assume that there was error. That's a big assumption, but I'm asking you to assume it. Your answer to my question is that it's harmless error and we affirm even if there was a mistake in not providing Mr. Pfeiffer's requested definition of positional isomer. It depends, Your Honor, on whether... I don't know what Dr. Dudley's testimony was relevant to. If it's relevant to... Didn't he provide... Didn't he provide a... Not that you had to accept it or the jury had to accept it. Didn't he provide a basis for a different scientific definition of positional isomer? Insofar as that a textbook lists it, yes. Okay, that's an alternative... You may not agree with it, but that's an alternative definition, is it not? It is. Okay, I've taken you way beyond your time. And thank you very much for answering my question. Thank you, Your Honors. Mr. Brashear, you have three minutes left. Thank you, Your Honors. I'd like to pick up, if I may, on the last question since we're on that topic and then two additional points. For some things that were brought up before. So on this question of remand, Judge Jordan, I think you hit the nail on the head with what this case is all about. The government's theory of prosecution from its indictment through its presentation of evidence is that this is a Section D case. The government's expert even testified to the effect that it doesn't matter what the science says. This is... Ethylone is a positional isomer of butylone under the Section D definition. And as a matter of sufficiency, the government did not provide sufficient evidence of that as well. So wasn't there something a little bit also odd procedurally in this case in that the government sought to put on some evidence in its rebuttal case? Yes. Like assuming you were partially right or to hedge its bets. And the district court at that point said to the government, you don't need to put on that evidence because I've agreed with you on the definition of positional isomer. Yeah, and this is a really critical point. And to answer a question that you didn't ask, but I was not the trial attorney, but as an appellate attorney, I know the perils of not proffering evidence because our record here shows what the deficiency in that was. And there's two very specific points in the record here. Doc 98, which is where this occurred, pages 91 and 93. Because this is where all of the discussion occurred with the district court. First, the government said, well, we want to put on our expert to say that there are other definitions of positional isomer under which Butylone would qualify. Totally different theory from what it originally presented. Two pages later, page 93, the district court says, I think the government is going to bring their expert to say their definition is consistent with the scientific definition, which contradicts Dr. Dudley's testimony. And the government agreed with that. Two completely contradictory points that the government is proffering, neither of which we actually have the scientist, the government's expert, to proffer that evidence. So you don't need the expert though. To make a proffer, you don't need the actual witness there. What I'm saying is what we don't have is a clear basis about what would be that rebuttal testimony, because there are two contradictory things. Well, the government's theory of prosecution was section D. And what it's trying to do now is to change that theory midstream as a sufficiency matter. So as your honor pointed out, they did put all their eggs in the basket of a section D prosecution. And by all accounts, that's what this case was indicted on. That's what the government brought forward. And at the 11th hour, and it would be disingenuous for me to say that anything procedurally as far as how this brought forward was abundantly clear, but we are where we are because it's a sufficiency case. The government has the burden. It chose to pursue this as a section D case. And as the discussion here has shown, they did not, and I see my time is up. I need to finish. They did not properly list or notify the public of ethylone being a temporary scheduled substance. So when they brought this prosecution as indicted of a positional isomer of butylone under section H, they did not prove that case. And to allow them to go back now for a second bite of an apple would strike at the core of double jeopardy principles because they did not prove the case that they sought out to do. All right, Mr. Beshear. Thank you very much, Mr. ethylone. Thank you very much. We appreciate the argument.